UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
GOVERNMENT EMPLOYEES       :
INSURANCE COMPANY *et al.*,      :
                                  :
                 Plaintiffs,    :
                                  :   **MEMORANDUM DECISION AND**
        -against-        :   **ORDER**
                                  :
J FLEXIBLE CORP., LJR NY INC.,    :   25-cv-6700 (BMC)
YEVGENIYA IVANOVA, and JOHN DOE  :
DEFENDANTS 1-10,          :
                                  :
               Defendants.   :
-------------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs bring this action under the Racketeer Influenced and Corrupt Organizations ("RICO") Act and several common law theories of liability. Defendants have moved to dismiss plaintiffs' claims under Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6). For the reasons that follow, the motion is granted in part and denied in part.

## SUMMARY OF COMPLAINT

This case concerns New York's "no-fault" car insurance system, which is designed to fast-track payment of insurance claims for personal injuries, regardless of who was at fault for causing the injury.[1] No-fault benefits include up to $50,000 of medically necessary expenses per insured which, relevant here, include durable medical equipment ("DME"). DME generally refers to reusable medical equipment, such as wheelchairs, orthopedic mattresses, or lumbar cushions. DME can get expensive and, as with any reimbursable expense, DME prescriptions

---

[1] See State Farm Mut. Auto. Ins. Co. v. Mallela, 372 F.3d 500, 503 (2d Cir. 2004) ("To guarantee that insureds are promptly compensated, the regulations also established strict, and brief, time periods for claim processing.") (citing 11 N.Y.C.R.R. § 65-3.11); see also GEICO v. Mayzenberg, 121 F.4th 404, 409 (2d Cir. 2024) ("New York enacted these measures to displace most of the state's common law tort regime for injuries arising from automobile accidents.").

must be medically necessary.  At issue here are two items of DME: Powered Pressure-Reducing Air Mattresses ("PPRAMs") and Pulsed Electro-Magnetic Field Therapy ("PEMF Devices"), each of which can be billed to plaintiffs for several thousand dollars.

Defendants, two DME supply companies and their owner, abused the no-fault system by seeking reimbursement from plaintiffs for hundreds of fraudulent prescriptions for PPRAMs and PEMF Devices.  Defendants had no legitimate retail or office location and made no commercial efforts that one might expect from a DME supply company.  Any "business" defendants obtained was through collusive agreements with various clinics that would prescribe medically unnecessary DME to inflate the bill later submitted to plaintiffs.  Defendants concealed their fraud by routing the shipment of the DME back to themselves, so the patients never knew they were prescribed the DME in the first place.

Defendants were enabled to commit this fraud scheme with the help of various unnamed persons, some of whom work for the medical clinics that issued the fraudulent DME prescriptions ("Clinic John Does"), and others who work for defendants, *i.e.*, the DME suppliers ("DME John Does").[2]  The DME John Does procured the fraudulent prescriptions from the Clinic John Does so that defendants could submit them to plaintiffs for reimbursement.

There are seven clinics that the Clinic John Does "illegally own and control."  The Clinic John Does issued the DME prescriptions even though they were not licensed healthcare professionals, but rather had conspired with defendants to further the fraudulent scheme.  These clinics therefore prescribed and dispensed DME pursuant to predetermined protocols to

---

[2] Defendants make arguments in support of dismissal of the Counts brought against the John Doe defendants. Presumably, those arguments apply only to the DME John Does because defendants' counsel does not represent the clinics or their employees.  Thus, there is no motion to dismiss the claims against the Clinic John Does. Nonetheless, because the Clinic John Does are integral to the scheme, the Court will consider whether to "dismiss [plaintiffs'] claims against the [Clinic] John Doe[s] *sua sponte*."  See Rivera v. Fed. Bureau of Prisons, 368 F. Supp. 3d 741, 744 n.2 (S.D.N.Y. 2019).

maximize profits, rather than medical necessity.  This is evidenced by examples of identical DME being issued to persons involved in the same accident,[3] and the testimony of former healthcare providers at these clinics, who have testified that the employees forged their signatures on prescriptions.

To date, defendants have wrongfully obtained $455,000 from plaintiffs and have made around another $2 million worth of claims that plaintiffs have not yet paid.  Plaintiffs seek a judgment declaring that they need not pay the outstanding claims and awarding damages for the paid claims, based on theories under RICO and common law fraud and unjust enrichment.

## DISCUSSION

### I.    <u>Legal Standards</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007), and to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[.]" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  When deciding a motion to dismiss, the Court must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." <u>Elias v. Rolling Stone LLC</u>, 872 F.3d 97, 104 (2d Cir. 2017) (quoting <u>Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.</u>, 620 F.3d 146, 150 (2d Cir. 2010)).

---

[3] In a hypothetical car accident involving three passengers who vary in age, physical characteristic, health, etc., one can reasonably expect each passenger to suffer different injuries requiring different treatment.  So, if all three passengers sought medical help at the same clinic, it would be odd if each passenger's records showed that they suffered identical injuries and received identically worded prescriptions.  One or two instances might be negligible, but hundreds of times, resulting in millions of dollars' worth of claims, as plaintiffs allege here, sounds in fraud.

II.    **Declaratory Judgment**

Defendants first argue that the Court should decline to hear plaintiffs' claim for declaratory judgment because there "are procedures available [in] state court proceedings that allow for the global determination of coverage issues in no-fault cases, [which] duplicates what a federal declaratory judgment can offer." Even if such procedures exist, defendants offer no reason why the Court should require plaintiffs to use those procedures. And the Court sees none. "Rather than adjudicating hundreds of individual claims in a piecemeal fashion, all claims can be efficiently and effectively dealt with in a single declaratory judgment action." See GEICO v. Cean, No. 19-cv-2363, 2019 WL 6253804, at *5 (E.D.N.Y. Nov. 22, 2019) (citing Allstate v. Elzanaty, 929 F. Supp. 2d 199, 222 (E.D.N.Y. 2013)). The Court therefore declines to discretionarily dismiss Count 1.

In the alternative, defendants argue that the Court should compel arbitration of the unpaid claims. Plaintiffs counter that compulsory arbitration does not apply to these claims under the "'effective vindication' exception." See State Farm v. Tri-Borough, 120 F.4th 59, 90 (2d Cir. 2024) ("Developed by the Supreme Court, the 'effective vindication' doctrine . . . invalidates, 'on public policy grounds, arbitration agreements that operate as a prospective waiver of a party's right to pursue statutory remedies.'" (quoting Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 235 (2013))).

Plaintiffs are right, particularly in light of the Second Circuit's recent decision in GEICO v. Patel, No. 24-191, 2026 WL 272486 (2d Cir. Feb. 3, 2026). Patel is another no-fault RICO case that is practically on all fours with this one, and plaintiffs there obtained a preliminary injunction staying hundreds of arbitral and state-court proceedings because "of the risk of inconsistent state court judgments against it and the likelihood of unnecessary and 'potentially

4

unrecoverable' expenditures of time and resources[.]" Id. at *1 (citing Tri-Borough, 120 F.4th at 59); see also Allstate v. Mun, 751 F.3d 94, 99 (2d Cir. 2014) (Cautioning against sending "[c]omplex fraud and RICO claims . . . into" "New York's arbitration process for no-fault coverage" in which "[d]iscovery is limited or non-existent").

Patel involved "over 600 collection actions against GEICO in various New York state courts and arbitration tribunals." See Patel, 2026 WL 272486, at *1. Defendants' attempt to distinguish the circumstances here – that "the open cases number 301" – is unavailing. Were this Court to compel arbitration, plaintiffs would face the same kind of irreparable harm as enunciated in Patel and would likely succeed in enjoining the arbitral and state court proceedings. As a result, compelling arbitration would only delay inevitable adjudication by this Court. Thus, the Court declines to compel arbitration.

### III. Fraud Scheme Counts

All of plaintiff's remaining counts connect in some manner. Plaintiffs allege a conspiracy (Count 3) to commit a RICO violation (Count 2) by effectuating a scheme that begins with John Does who issue fraudulent prescriptions (Counts 6 and 9), later fulfilled by defendants who submitted fraudulent claims for reimbursement to plaintiffs (Counts 4 and 7), thereby unjustly enriching themselves (Counts 5 and 8).

#### A. Subject Matter Jurisdiction

Before reaching the merits, defendants argue that the Court lacks subject matter jurisdiction to hear any of plaintiff's fraud claims because they are unripe. Defendants' theory is that plaintiffs have "not suffered a recoverable loss on every reimbursement," but rather "only on those claims [plaintiffs] paid on 'unexhausted' policies." The gist of defendants' argument is that plaintiffs' damages could increase throughout this litigation and, until the damages are certain, the case is unripe.

To their credit, defendants acknowledge that this argument was recently rejected by Judge Block in another no-fault RICO case brought by plaintiffs (with the same counsel on both sides). See GEICO v. Akiva Imaging Inc., No. 24-cv-6549, 2025 WL 2163384, at *3 (E.D.N.Y. July 30, 2025) ("The dynamic central to [the] argument – that [plaintiffs'] recovery here would revive the exhausted policies – does not render [plaintiffs'] damages unclear or indefinite because a policy could become unexhausted *only if* [plaintiffs] prevail in *this* litigation.").

Defendants cast Akiva Imaging as "mistaken and incomplete [and] devised on a dubious legal standard[.]" The Court disagrees, and rejects this argument for the same reasons articulated by Judge Block:

> [E]ven accepting [defendants'] premise, [plaintiffs] have "actually suffered" ascertained damages only recoverable from this case . . . Holding otherwise would "effectively insulate fraudsters who engage in large scale abuse of the no-fault system, as no automobile insurer could ever assert a RICO claim to terminate a fraudulent enterprise and recoup stolen payments because the 'uncertainty' caused by potential policy exhaustion would extend 'until such time, if ever, as we know for sure that no additional claims for reimbursement can or will be made' under all relevant policies."

Id. at *3 (citations and quotations omitted). Accordingly, the Court proceeds to the merits of plaintiffs' claims.

**B. Fraud**

Where, as here, the complaint alleges fraud, the allegations are subject to a heightened pleading standard. See Fed. R. Civ. P. 9(b). To survive "under [Rule] 9(b)'s heightened pleading standard for fraud claims, a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent[;] (2) identify the speaker[;] (3) state where and when the statements were made[;] and (4) explain why the statements were fraudulent.'" Superb Motors Inc. v. Deo, 776 F. Supp. 3d 21, 90 (E.D.N.Y. 2025) (quoting Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004)). The "other [nonfraud] elements of a RICO claim . . . need satisfy only the 'short and

plain statement' standard of Rule 8(a)." D. Penguin Bros. Ltd. v. City Nat. Bank, 587 F. App'x 663, 666 (2d Cir. 2014) (citing McLaughlin v. Anderson, 962 F.2d 187, 194 (2d Cir. 1992)).

### i.    *Substantive Fraud*

Counts 4 and 7 charge defendants with common law fraud for submitting to plaintiffs hundreds of claims for reimbursement for fraudulent DME prescriptions. According to plaintiffs, when defendants did so, they fraudulently represented that they received a legitimate prescription for reasonable and medically necessary DME.

For Rule 9(b) purposes, plaintiffs easily hurdle the first three requirements: plaintiff specified the statements that were fraudulent (the claims for reimbursement); the speaker (defendants); and when and where the statements were made (by mail or wire on the dates listed on the claims). See Superb Motors, 776 F. Supp. 3d at 90. Defendants only seriously challenge the final requirement – explaining why the statements were fraudulent. See id.

Defendants' argument for dismissal boils down to its assertion that, under plaintiffs' telling of events, defendants are victims, not perpetrators, of fraud. Defendants say that they were simply fulfilling prescriptions; they had no way of telling if the DME was medically necessary or if the signatures were forged.

Defendants' theory has some intuitive appeal. A DME supplier is not a medical professional, and probably has no reason or incentive to question whether prescribed DME is medically necessary. In fact, doing so would probably be bad for business (because eventually the clinic would likely reroute DME prescriptions to a less "difficult" supplier). So, when an insurance company discovers that it has been reimbursing medically unnecessary DME, one possible conclusion is that the clinic is overly cautious with patients, and innocently over-prescribes DME. But that is not the only possible conclusion.

Indeed, the clinic may have an ulterior interest in prescribing the DME, and issue fraudulent (*i.e.*, known to be medically unnecessary) prescriptions to serve that interest.  And unless the clinic is also the DME supplier (which is not the case here), something must have induced the clinic to commit fraud.  Although there is no inherent reason to suspect the DME supplier of any wrongdoing, it is not far-fetched to suspect that the DME supplier was involved because, after all, the supplier's business interests are being served by fulfilling the fraudulent DME prescriptions.

That is what plaintiffs suspect occurred here.  However, to "survive a motion to dismiss, the Court must find that the claim is more than mere suspicion, but rather rests on 'factual allegations sufficient to raise a right to relief above the speculative level.'"  Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce, 694 F. Supp. 2d 287, 296 (S.D.N.Y. 2010) (quoting Twombly, 550 U.S. at 555).

Plaintiffs allege that defendants are culpable for the fraudulent prescriptions because they "procured the prescriptions through illegitimate, collusive arrangements and, as a result, knew that [the DME] prescriptions were not issued based on legitimate determinations of medical necessity[.]"  As plaintiffs see it, virtually the entirety of defendants' "business model" is perpetrating the fraud.  In other words, to have received prescriptions from the clinics in the first place, defendants must have necessarily known the prescriptions were fraudulent.

For factual support, plaintiffs describe how defendants are essentially shell companies that make no attempt to procure any legitimate business, either by maintaining a retail office or advertising their DME business.  Moreover, plaintiffs allege that defendants shipped the DME to themselves instead of patients in order to avoid detection.  Accepting their truth and making all reasonable inferences in plaintiffs' favor, these allegations have "nudged [plaintiffs'] claims

across the line from conceivable to plausible," Twombly, 550 U.S. at 548, and adequately "explain why the statements were fraudulent,'" Superb Motors, 776 F. Supp. 3d at 90; accord United States v. Chervin, 10-cr-918, 2011 WL 4424297, at *1, 15 (S.D.N.Y. Sep. 21, 2011) (Finding probable cause to believe defendant was "was knowingly involved in a complex mail or wire fraud scheme" based on allegations of "creating wholesale and retail shell corporations to perpetuate the fraudulent sale of Durable Medical Equipment ('DME') to obtain inflated reimbursement from no-fault insurance providers"). Accordingly, the Court denies defendants' motion to dismiss Counts 4 and 7.

### ii.   *Aiding and Abetting Fraud*

Counts 6 and 9 charge the John Does with aiding and abetting fraud. To adequately plead "aiding and abetting fraud, the complaint must allege: (1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud." ICD Capital, LLC v. Codesmart Holdings, Inc., 842 F. App'x 705, 706 (2d Cir. 2021) (quotations omitted). Because Counts 4 and 7 survive, plaintiffs have adequately alleged the existence of the underlying fraud, leaving only the "knowledge" and "substantial assistance" elements.

***Clinic John Does.*** The Clinic John Does provided defendants with the fraudulent DME prescriptions which were the mechanism of defendants' fraud scheme. Plaintiffs adequately allege that the Clinic John Does knew they were submitting fraudulent DME prescriptions to plaintiffs because the signatures therein were forged. And by providing defendants with the mechanism of their fraud scheme, the Clinic John Does substantially assisted that scheme. That satisfies "[Rule] 9(b)'s heightened pleading standard for fraud claims," see Superb Motors, 776 F. Supp. 3d at 90, and plaintiffs' allegations "raise a right to relief above the speculative level,"

9

see Plumbers, 694 F. Supp. 2d at 296 (quoting Twombly, 550 U.S. at 555).  Thus, the Court declines to *sua sponte* dismiss Counts 6 and 9 against the Clinic John Does.

***DME John Does.***  The DME John Does procured the "streams" of "business" from the Clinic John Does by means of kickbacks or other financial incentives in exchange for being provided the fraudulent DME prescriptions.  Thus, plaintiffs adequately allege that the DME John Does knew of defendants' fraud and substantially assisted that fraud by inducing the Clinic John Does to commit fraud.

Defendants contend that the saga in GEICO v. Mayzenberg, 121 F.4th 404 (2d Cir. 2024), question certified, _ N.E.3d _, 2025 WL 3259882 (N.Y. Nov. 24, 2025), vacating and remanding, _ F.4th _, 2026 WL 663837 (2d Cir. Mar. 10, 2026), is dispositive.  In Mayzenberg, plaintiffs refused to pay no-fault benefits to a healthcare provider that was engaged in unethical referral agreements, in violation of state licensing requirements.  See id. at 422 (citing N.Y. Educ. L. § 6530(18) and 8 N.Y.C.R.R. § 29.1(b)(3)).  After the Second Circuit certified the question, the New York Court of Appeals found that, generally, an "insurer [cannot] deny a healthcare provider's no-fault benefits claim because the provider allegedly committed professional misconduct by paying for patient referrals."  Mayzenberg, 2025 WL 3259882, at *1.  Thus, according to defendants, even if the DME John Does (or defendants for that matter) "paid kickbacks or other financial incentives in exchange" for the DME prescriptions, that cannot be the basis for denying reimbursement under Mayzenberg, and thus cannot be fraud.

Defendants' reliance on Mayzenberg is misplaced because professional misconduct has no role in this case.  This case does not concern "referral agreements" for legitimate prescriptions (which may violate professional misconduct regulations).  Rather, it concerns "referral

agreements" for *fraudulent* prescriptions, which is not a "referral agreement" at all; it is simple fraud, beyond the "professional misconduct" bounds of Mayzenberg.

Defendants alternatively argue that the allegations against the DME John Does are too vague, and that until plaintiffs "can give clearer notice of who these individuals . . . are, the John Does do not belong as defendants in this action." It is true that "the use of 'John Doe' to identify a defendant is not favored." Feliciano v. Cnty. of Suffolk, 419 F. Supp. 2d 302, 313 (E.D.N.Y. 2005). Nonetheless, "courts have rejected the dismissal of suits against unnamed defendants . . . until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials." Davis v. Kelly, 160 F.3d 917, 921 (2d Cir. 1998). As to the DME John Does, plaintiffs have identified their places of work and detailed their involvement in the alleged fraud scheme, which is enough at this juncture. Accordingly, the Court denies defendants' motion to dismiss Counts 6 and 9 against the DME John Does.

### C.    Unjust Enrichment

Counts 5 and 8 charge defendants with unjust enrichment based on their retention of $455,000 procured from the fraudulent DME prescriptions. Defendants argue that these should be dismissed as duplicative of the fraud claims. The Court agrees.

A "plaintiff may plead unjust enrichment in the alternative, but where an unjust enrichment claim is duplicative of other causes of action, it should be dismissed." Bourbia v. S.C. Johnson & Son, Inc., 375 F. Supp. 3d 454, 467 (S.D.N.Y. 2019) (citing Buonasera v. Honest Co., Inc., 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016)). Here, the unjust enrichment claims rely "on the same conduct that forms the basis of [the] other claims" and are therefore duplicative. Id. ("To the extent any of [plaintiffs'] other claims succeed, the unjust enrichment claim[s] would be duplicative; to the extent they do not succeed, the unjust enrichment claim would not remedy the defects."). Accordingly, the Court dismisses Counts 5 and 8.

11

**D.    RICO**

Count 2 charges defendant Ivanova, owner of the DME supplier defendants, with a substantive RICO violation under 18 U.S.C. § 1962(c).  Count 3 charges Ivanova, the Clinic John Does, and the DME John Does with conspiracy to violate RICO.

      *i.    Substantive RICO*

To state a § 1962(c) claim, plaintiff must plead facts sufficient to support (1) a RICO violation, (2) an injury to its business or property, and (3) a proximate causal connection between the injury and a substantive RICO violation.  See 18 U.S.C. §§ 1962(c), 1964(c); Holmes v. Secs. Inv'r Prot. Corp., 503 U.S. 258, 265-68 (1992).  Here, the injury and causation elements are undisputed; neither party contests that plaintiffs remitted to defendants $455,000 for the DME prescriptions.  The only dispute is whether those prescriptions were the product of fraud, *i.e.*, whether there was a RICO violation.

A RICO violation requires allegations of (i) conduct of an enterprise (ii) through two or more related predicate acts of racketeering activity.  See Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 119 (2d Cir. 2013) (quoting Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999)).

**Enterprise.**  A RICO enterprise includes "a group of persons associated together for a common purpose of engaging in a course of conduct[.]"  United States v. Turkette, 452 U.S. 576, 583 (1981)).  However, "a RICO enterprise cannot 'consist[] merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant.'"  Allstate v. Geykhman, No. 24-cv-4580, 2025 WL 2576749, at *7 (E.D.N.Y. Sept. 7, 2025) (quoting U1it4less, Inc. v. Fedex Corp., 871 F.3d 199, 205 (2d Cir. 2017)); see also Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 120 (2d Cir. 2013) ("[A] corporate person cannot violate the statute by corrupting itself."). However, when

a natural person controls two active corporations that operate independently . . . receive independent benefits from the illegal acts of the enterprise, and affirmatively use their separate corporate status to further the illegal goals of the enterprise, [the Second Circuit] will regard each of the three entities as distinct from their coordinated enterprise under Section 1962(c).

U1it4less, Inc. v. Fedex Corp., 871 F.3d 199, 206 (2d Cir. 2017) (citing Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 263–64 (2d Cir. 1995)). "Other courts in this district considering similar tripartite groupings of defendants in the no-fault insurance fraud context have found that these types of allegations are sufficient to demonstrate that a RICO enterprise exists." Allstate, 2025 WL 2576749, at *8 (collecting cases).

Here, plaintiffs allegations are on all fours with U1it4less. Plaintiffs allege that Ivanova, a natural person, controlled the two DME supplier defendants – J Flexible Corp. and LJR NY Inc. – that make up the "DME Provider Enterprise." The DME supplier defendants received independent benefits from the enterprise, whereby J Flexible Corp. received $270,000 and LJR NY Inc. received $185,000. Lastly, plaintiff alleges that the DME supplier defendants "operated under two separate names and tax identification numbers . . . to limit the . . . volume of bills submitted under any individual name . . . to avoid attracting the attention and scrutiny of [plaintiffs] to the . . . pattern of fraudulent charges[.]" This more than meets the mark for alleging a RICO enterprise.

*Pattern of Racketeering Activity.* Predicate racketeering acts include any act indictable under 18 U.S.C. §§ 1341, 1343, and 1344, pertaining to mail fraud, wire fraud, or financial institution fraud. See 18 U.S.C. § 1961(1). "Predicate acts are 'related' for RICO purposes when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated

13

events.'" Schlaifer Nance, 119 F.3d at 97 (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 240 (1989)).

Here, the alleged racketeering activity is submitting fraudulent claims for reimbursement relating to DME prescriptions, which is plainly indictable as mail or wire fraud. See, e.g., Chervin, 2011 WL 4424297, at *15. Moreover, the acts are related because the claims were submitted to the same victim insurance provider and always concerned one of two items of DME: PPRAMs or PEMF Devices. Lastly, plaintiffs have alleged a "pattern" of this activity by submitting that defendants made hundreds of these same fraudulent claims for reimbursement. "This is the quintessential 'pattern of racketeering activity' targeted by RICO." See Sybedon Corp. v. Mendell, 646 F. Supp. 937, 940 (S.D.N.Y. 1986) (Discussing "fraudulently scheming [defendants who] victimized a series of insurance companies, and were clearly prepared to go on doing so" (citing United States v. Teitler, 802 F.2d 606 (2d Cir. 1986))).

Defendants' only argument for dismissal mirrors their argument for dismissing the fraud claims, i.e., that defendants were victims, not perpetrators, of fraud. In other words, defendants argue that plaintiffs have not adequately alleged that defendants "personally committed or aided and abetted the commission of [the] predicate acts.'" 4 K & D Corp., 2 F. Supp. 3d at 537 (quoting McLaughlin, 962 F.2d at 192). But that argument fails here for the same reasons that it fails as to plaintiffs' fraud claims. Thus, plaintiff has alleged a RICO violation, and the Court denies defendants' motion to dismiss Count 2.

> ii.    *RICO Conspiracy*

To state a conspiracy claim under section 1962(d), plaintiff must allege that defendants "agree[d] to conduct or to participate in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." United States v. Zemlyansky, 908 F.3d 1, 11 (2d Cir. 2018) (quoting

United States v. Pizzonia, 577 F.3d 455, 462 (2d Cir. 2009)).  "More specifically, the pleading must allege: (a) 'an agreement to join a racketeering scheme,' (b) 'the defendant[s'] knowing engagement in the scheme with the intent that its overall goals be effectuated,' and (c) 'that the scheme involved, or by agreement between any members of the conspiracy was intended to involve, two or more predicate acts of racketeering.'"  Allstate, 2025 WL 2576749, at *11 (quoting Zemlyansky, 908 F.3d at 11).

For the same reasons discussed above, plaintiffs have adequately alleged the racketeering scheme and predicate acts of racketeering, so the only remaining question is whether plaintiffs have adequately alleged defendants' knowledge and intent.  As for Ivanova, she was allegedly the sole owner and operator of the two entities constituting the RICO enterprise.  Put differently, the two entities could not have engaged in a RICO enterprise without Ivanova's knowledge of the enterprise and intent to effectuate it.  As for the Clinic John Does and DME John Does, plaintiffs have adequately alleged their knowledge and intent for the same reasons plaintiffs' aiding-and-abetting-fraud claim survived against them, because the fraud scheme they aided or abetted was the RICO violation they conspired to effectuate.  Accordingly, the Court denies defendants' motion to dismiss Count 3.

### CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part as set forth above.

**SO ORDERED.**

Dated:   Brooklyn, New York
        March 17, 2026

_Brian M. Cogan_
U.S.D.J.

15